**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
ALBUQUERQUE DIVISION**

DAVID JUSTICE, individually and on behalf
of all others similarly situated,

               *Plaintiff*,

      v.

MIZUHO BANK, LTD. and MARK
KARPELES,

          *Defendants*.

Case No. 1:18-cv-286-NF-KHR

**DEFENDANT MIZUHO BANK, LTD.'S MOTION TO DISMISS
THE COMPLAINT AND MEMORANDUM IN SUPPORT THEREOF**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 3

    A.    Mt. Gox ......................................................................................... 3

    B.    David Justice ................................................................................. 5

    C.    Procedural Background .................................................................. 6

ARGUMENT .............................................................................................................. 7

    I.    The Court Lacks Personal Jurisdiction Over Mizuho ................................. 7

    II.    The Complaint Fails To State A Claim For Tortious Interference ................... 11

    A.    Justice Has Not Alleged That Mizuho Knew About  His Contract With Mt. Gox ............................................................ 12

    B.    Justice Has Not Alleged That Mizuho Caused Mt. Gox To Breach Its Contract With Justice ................................................... 13

    C.    Justice Has Not Pleaded That Mizuho's Conduct Was Not Justified ......................................................................................... 14

    III.    Justice Cannot Pursue A Class Claim Against Mizuho ..................................... 15

CONCLUSION ........................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*American Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974)........................................................................................................17

*Anzures v. Flagship Rest. Grp.*,
    819 F.3d 1277 (10th Cir. 2016) ....................................................................................9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................................11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................................11

*Bristol-Myers Squibb Co. v. Super. Ct.*,
    137 S. Ct. 1773 (2017)...................................................................................................8

*China Agritech, Inc. v. Resh*,
    138 S. Ct. 1800 (2018).................................................................................2, 3, 16, 17

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014).....................................................................................................8

*Fikes v. Furst*,
    134 N.M. 602 (2003) ..............................................................................................14, 15

*Fourth Corner Credit Union v. Fed. Reserve Bank of Kansas City*,
    861 F.3d 1052 (10th Cir. 2017) ....................................................................................3

*Greene v. Mizuho Bank, Ltd.*,
    169 F. Supp. 3d 855 (N.D. Ill. 2016) .......................................................................6, 10

*Greene v. Mizuho Bank, Ltd.*,
    2018 WL 2735112 (N.D. Ill. June 7, 2018) ...............................................................7, 14

*Horizon AG-Products v. Precision Sys. Eng'g, Inc.*,
    2010 WL 4054131 (D.N.M. Sept. 28, 2010) ...........................................11, 12, 13, 14

*Jacobsen v. Deseret Book Co.*,
    287 F.3d 936 (10th Cir. 2002) .......................................................................................3

*Lane v. Page*,
    649 F. Supp. 2d 1256 (D.N.M. 2009) ............................................................................3

*Old Republic Ins. Co. v. Cont'l Motors, Inc.*,
877 F.3d 895 (10th Cir. 2017) ...................................................................8, 9

*Sanders v. Apple Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) ...................................................16, 17

*Shrader v. Biddinger*,
633 F.3d 1235 (10th Cir. 2011) ......................................................................9

*Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*,
7 F.3d 1434 (9th Cir. 1993) .........................................................................12

*Tarantino v. Gawker Media, LLC*,
2014 WL 2434647 (C.D. Cal. Apr. 22, 2014) .................................................3

*Tullie v. Quick Cash, Inc.*,
2014 WL 12782961 (D.N.M. Dec. 12, 2014) ...............................................16

*Walden v. Fiore*,
134 S. Ct. 1115 (2014)........................................................................8, 9, 10

*Warnick v. Cooley*,
2018 WL 3340519 (10th Cir. July 9, 2018)..................................................11

*Wolf v. Perry*,
65 N.M. 457 (1959) .....................................................................................13

**Other Authorities**

Fed. R. Civ. P. 12(b)(2).....................................................................................1

Fed. R. Civ. P. 12(b)(6).......................................................................1, 11, 16

Fed. R. Civ. P. 12(f)....................................................................................1, 16, 17

Fed. R. Civ. P. 23(b)(3)...................................................................................15

N.M. R. Civ. P. 7.1(a) .......................................................................................1

N.M.S.A. § 37-1-4 ............................................................................................16

Pursuant to Rules 12(b)(2), 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure, defendant Mizuho Bank, Ltd. ("Mizuho") respectfully moves for (i) an order dismissing with prejudice (as against Mizuho) the Complaint (ECF No. 1) filed by plaintiff David Justice for lack of personal jurisdiction and failure to state a claim, or, in the alternative, (ii) an order dismissing or striking all class action allegations against Mizuho from the Complaint.  Counsel for Mizuho conferred in good faith with counsel for the plaintiff in an effort to seek concurrence pursuant to District of New Mexico Local Rule of Civil Procedure 7.1(a), but the plaintiff opposes the motion.

## PRELIMINARY STATEMENT

Despite widespread reports beginning in June 2013 of delays withdrawing money from a now-defunct Japan-based bitcoin platform called Mt. Gox, plaintiff David Justice decided in December 2013 to convert bitcoin held in his account with Mt. Gox to fiat currency in order to withdraw approximately $15,000 in U.S. dollars.  After contacting Mt. Gox on January 21, 2014, Justice received messages from Mt. Gox on January 25, 2014 and in February 2014 notifying him that international withdrawals were delayed.  A few weeks later, Mt. Gox collapsed and filed for bankruptcy in Japan amid reports of gross mismanagement and theft by its owner, Mark Karpeles, resulting in over $400 million in losses to Mt. Gox users.

Karpeles is currently standing trial in Japan for fraud and embezzlement in connection with his management of Mt. Gox, and is also a defendant here.  Nonetheless, Justice appears to have made no effort to serve Karpeles in this action.  Instead, Justice seeks to hold Mizuho – a Japanese bank that had no contractual or other business relationship with Justice or any of Mt. Gox's other users – accountable for the money he and other users invested and lost.  Justice's

claim that Mizuho tortiously interfered with his contract with Mt. Gox has no factual or legal basis and should be dismissed, for two reasons.

*First*, this Court does not have personal jurisdiction over Mizuho.  Mizuho is a Japanese corporation with its principal place of business in Tokyo.  This lawsuit's only connection to this forum is that the plaintiff resides in New Mexico.  All of the activities that give rise to the plaintiff's claims occurred in Japan, not New Mexico.  Accordingly, under Supreme Court and Tenth Circuit precedent, the Court does not have general or specific personal jurisdiction over Mizuho.  Indeed, in a related case, a district court in the Northern District of Illinois dismissed for lack of personal jurisdiction a tortious interference claim that was virtually identical to Justice's claim here.  This Court should do the same.

*Second*, Justice has not pleaded and cannot plead three essential elements of his claim. Specifically, he has not pleaded facts supporting a plausible inference that Mizuho (i) knew that Justice had a contract with Mt. Gox, or even knew he was a Mt. Gox user at any time before he filed suit; (ii) played an active and substantial part in causing a breach of that contract or the losses that Justice allegedly suffered – losses that Justice has attributed to the "gross negligence or outright theft" of Mt. Gox's CEO, Mark Karpeles (Compl. ¶ 1); or (iii) acted without justification to induce a breach of Justice's contract with Mt. Gox.  The Court should therefore dismiss the Complaint as against Mizuho in its entirety.

Alternatively, the Court should strike Justice's class allegations against Mizuho because this suit cannot be maintained as a class action in light of the Supreme Court's June 11, 2018 decision in *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018).  Justice filed this action on March 26, 2018 – more than four years after the underlying events allegedly occurred and hence

after New Mexico's four-year limitations period for tortious interference claims had already

expired.  Although Justice's individual claim may have been tolled by the filing in March 2014

of a related putative class action in Illinois, *China Agritech* blocks him from pursuing a class

action of his own.  Thus, at a minimum, the Court should strike Justice's class allegations against

Mizuho.

## STATEMENT OF FACTS[1]

### A.    Mt. Gox

Mt. Gox was founded in 2009 as a platform for buying and selling bitcoin.  Compl. ¶ 9.

Before its collapse, Mt. Gox claimed to provide users the ability to "[b]uy and sell Bitcoin

24/7/365 with the world's most sophisticated trading platform."  *Id*.  Mt. Gox was owned and run

by defendant Mark Karpeles.  *Id*. ¶ 14.  In September 2012, Mt. Gox opened bank accounts at

Mizuho's Shibuya Branch in Tokyo, Japan.[2]  Imaizumi Decl. ¶ 5; Compl. ¶ 18.

To transact on the Mt. Gox platform (sometimes referred to as an "exchange"), users had

---

[1]    The facts set forth herein are taken from the Complaint and documents incorporated by
reference therein, the accompanying Declaration of Yasuo Imaizumi (the "Imaizumi
Declaration"), and other information subject to judicial notice and exhibited to the
accompanying Declaration of Jerome S. Fortinsky (the "Fortinsky Declaration").  *See Fourth
Corner Credit Union v. Fed. Reserve Bank of Kansas City*, 861 F.3d 1052, 1061 n.6 (10th
Cir. 2017) (in deciding motion to dismiss, court may consider documents referred to in
complaint) (citing *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)); *Lane
v. Page*, 649 F. Supp. 2d 1256, 1301 (D.N.M. 2009) ("[I]t is appropriate for the Court to
consider, on a motion to dismiss, materials such as newspaper articles not referenced in a
complaint."); *see also Tarantino v. Gawker Media, LLC,* 2014 WL 2434647, at *1 n.1 (C.D.
Cal. Apr. 22, 2014) (taking judicial notice of "publicly available newspaper and magazine
articles and web pages that 'indicate what was in the public realm at the time, not whether the
contents of those articles were in fact true.'").  Mizuho accepts the allegations in the sources
other than the Imaizumi Declaration solely for purposes of this motion, and does not admit
these facts for any other purpose.

[2]    Mizuho is a financial institution incorporated under the laws of Japan with its principal place
of business in Japan.  Imaizumi Decl. ¶¶ 2-3; Compl. ¶ 5.

to register for an account with Mt. Gox.  Compl. ¶ 10.  Once an account was opened, the user could transfer bitcoin or cash into the Mt. Gox account, and could then buy, sell, or trade bitcoin on the platform.  *Id*. ¶ 12.  Mt. Gox users who wished to withdraw cash from their Mt. Gox accounts would submit withdrawal requests to Mt. Gox.  *Id*. ¶ 20.  Mt. Gox, in turn, would submit instructions to one of its banks, such as Mizuho's Shibuya branch in Japan, to wire funds from Mt. Gox's account to the user's designated account at a designated bank.  *Id*.  Mt. Gox users had no relationship and no interaction with Mizuho; their accounts and interactions were exclusively with Mt. Gox.  Imaizumi Decl. ¶¶ 6-7.

In or about mid-2013, Mizuho became concerned about press reports "that U.S. authorities were investigating Mt. Gox for business dealings related to money laundering,"[3] and sought to terminate its relationship with Mt. Gox.  Compl. ¶¶ 22-23.  Mizuho asked Karpeles to close Mt. Gox's account, but he refused to do so.  *Id*. ¶ 23.[4]  Consequently, as part of its plan to eventually close Mt. Gox's account consistent with Japanese law, Mizuho informed Mt. Gox that, as of June 20, 2013, Mizuho would no longer accept outgoing wire transfer requests from Mt. Gox.  Compl. ¶¶ 24-25.  The decision to stop accepting wire transfer requests from Mt. Gox and all other policies and decisions relating to Mt. Gox's bank accounts were made by Mizuho employees in Japan.  Imaizumi Decl. ¶ 5.

Also around mid-2013, Mt. Gox users reported "substantial difficulties" in withdrawing

---

[3]   In May 2013, the U.S. Department of Homeland Security seized $5 million from the U.S. bank accounts of an affiliate of Mt. Gox.  *See Why Are the Feds Seizing Mt. Gox and Dwolla Funds?*, Fortinsky Decl. Ex. 7.

[4]   Although not the basis of or essential to this motion, we note for context that Japanese banking laws did not permit Mizuho to unilaterally close Mt. Gox's account without evidence (which, other than speculative press reports, Mizuho did not have) that Mt. Gox failed to comply with banking regulations.

cash from their Mt. Gox accounts.  Compl. ¶ 26.[5]  Mt. Gox also updated its users about withdrawal delays:  it posted on June 20, 2013 that it was suspending all U.S. dollar withdrawals temporarily (Fortinsky Decl. Ex. 5), and on July 4, 2013 that it was working with new banking partners and had a two-week delay in processing withdrawal requests (Fortinsky Decl. Ex. 6).

On February 7, 2014, "Karpeles halted his customers' ability to withdraw any form of currency" because he "was purportedly investigating a 'bug' or 'technical malfunction.'" Compl. ¶ 33.  A few days later, on February 10, he claimed to have "detected 'unusual activity'" involving third parties manipulating transactions on Mt. Gox.  *Id.*  Mt. Gox stopped processing all customer transactions on February 24 and filed for bankruptcy in Japan on February 28.  *Id.* ¶¶ 35-36.  At that time, Mt. Gox revealed that it lost over $450 million worth of bitcoin.  *Id.* ¶¶ 1, 37.  According to the plaintiff, Karpeles "was responsible for the loss of more than $400 million from users on the Exchange through either gross negligence or outright theft."  *Id.* ¶ 1.  Karpeles has since been charged criminally in Japan and is standing trial for fraud in connection with his management of Mt. Gox.  *Id.* ¶ 41.

### B.    David Justice

Justice alleges that he joined Mt. Gox "in or around February 16, 2013."  Compl. ¶ 42. Justice does not allege that he made any cash deposits into Mt. Gox's account at Mizuho or that he paid any transaction fees to Mizuho.  Justice claims that, in December 2013, he converted some of his bitcoin to fiat currency "with the intention of immediately withdrawing" $15,000

---

[5]    *See also Bitcoin Prices Have Stayed Afloat Amid The Fed-Fueled Storm, But Look Out Ahead*, Fortinsky Decl. Ex. 1; *Withdrawals From Mt. Gox:  Growing Pains Or Banking Bottleneck?*, Fortinsky Decl. Ex. 2; *The Slow Decline of Bitcoin's Biggest Exchange, In One Chart*, Fortinsky Decl. Ex. 3; *Mt. Gox USD Withdrawals To Take Up To 22 Months*, Fortinsky Decl. Ex. 4.

from Mt. Gox, and submitted a withdrawal request to Mt. Gox on December 17, 2013 with

instructions to deposit the funds into his U.S. bank account. *Id*. ¶¶ 44-45. Justice alleges that he

received confirmation that Mt. Gox received the withdrawal request, but he did not receive his

funds. *Id*. ¶ 45. Justice alleges that he contacted Mt. Gox on January 21, 2014 to inquire about

his withdrawal request and that Mt. Gox responded on January 25, 2014, indicating that there

was "approximately a two-week back log" for withdrawals. *Id*. ¶ 47. In or around February

2014, Justice received "a message from Mt. Gox customer support indicating that all

international withdrawals were delayed." *Id*. ¶ 48. Justice alleges that he initiated a total of 15

withdrawal requests, "but Mt. Gox canceled his request every time." *Id*. ¶ 49. *Justice does not*

*allege that he communicated or interacted in any way with Mizuho*. Nor does he allege any facts

suggesting that Mizuho knew that he had a contractual relationship with Mt. Gox, knew that he

made a withdrawal request to Mt. Gox, or even knew that he existed.

### C.    Procedural Background

Justice's counsel originally filed suit in the U.S. District Court for the Northern District

of Illinois in February 2014 against Karpeles and Mt. Gox on behalf of an Illinois plaintiff

purporting to represent a class of similarly situated individuals (the "Illinois Action"). In March

2014, Mizuho was added as a defendant. The claims against Mizuho included a claim for

tortious interference with contract almost identical to Justice's claim in this action. The Illinois

court dismissed that claim for lack of personal jurisdiction after finding that Mizuho lacked the

requisite minimum contacts with Illinois. *Greene v. Mizuho Bank, Ltd.*, 169 F. Supp. 3d 855,

863, 865 (N.D. Ill. 2016). Specifically, the court found that plaintiff Gregory Greene, who

asserted a tortious interference claim against Mizuho, had not alleged that he made any deposits

into Mt. Gox's account with Mizuho or that he paid any related transaction fees (unlike a different plaintiff, who allegedly sent a wire transfer to Mt. Gox's account at Mizuho and paid a related transaction fee). The Illinois court therefore concluded that Mizuho had "no transactional contacts with Greene at all" and dismissed his claim against Mizuho for lack of personal jurisdiction. *Id.* at 865.

On June 7, 2018, the Illinois court denied the remaining plaintiff's motion for class certification, and, in doing so, rejected several of the key assumptions on which Justice's claim is based. *See Greene v. Mizuho Bank, Ltd.*, 2018 WL 2735112 (N.D. Ill. June 7, 2018). For example, contrary to Justice's allegation that "[i]n mid-2013, Mizuho Bank was the exclusive processor of all bank deposits and withdrawals made by Mt. Gox users located in the United States" (Compl. ¶ 21), the Illinois court found that "Mizuho did not play an exclusive role in this regard, as Mt. Gox relied at different points in time on other financial institutions and payment processors, including Japan Post Bank, Dwolla, and OK Pay, to facilitate fiat currency deposits and withdrawals." *Greene*, 2018 WL 2735112, at *2. And, contrary to Justice's insistence that withdrawals were "virtually impossible" after Mizuho stopped providing outbound wire services to Mt. Gox (Compl. ¶ 83), the Illinois court found that "[f]rom June 2013 until February 2014, when Mt. Gox ceased operations and declared bankruptcy, Mt. Gox account holders in the United States could withdraw fiat currency using other intermediaries." *Greene*, 2018 WL 2735112, at *2.

## ARGUMENT

### I.     The Court Lacks Personal Jurisdiction Over Mizuho

Mizuho is incorporated under the laws of Japan and has its principal place of business in

Tokyo, Japan.  Imaizumi Decl. ¶ 1.  Mizuho thus is not "at home" in New Mexico (or anywhere in the United States), and the Court does not have general jurisdiction over Mizuho.  *Daimler AG v. Bauman*, 134 S. Ct. 746, 760-62 (2014).

The Court likewise lacks specific jurisdiction over Mizuho.  The Supreme Court in *Walden v. Fiore*, 134 S. Ct. 1115 (2014), significantly narrowed the test for specific personal jurisdiction.  *See Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 917 (10th Cir. 2017) (explaining that *Walden* narrowed the specific personal jurisdiction analysis).  The Supreme Court explained that "[t]he inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation."  *Walden*, 134 S. Ct. at 1121 (citations and quotation marks omitted).  Specifically, "the defendant's suit-related conduct must create a *substantial* connection with the forum State."  *Id.* (emphasis added).  In analyzing the necessary substantial connection, the Supreme Court has emphasized that the court's "primary concern" is "the burden on the defendant."  *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1780 (2017) (citations and quotation marks omitted).

Two principles animate the Supreme Court's "defendant-focused" inquiry.  *Walden*, 134 S. Ct. at 1122.  First, "the relationship [between the nonresident defendant, the forum, and the litigation] must arise out of contacts the 'defendant *himself*' creates with the forum State."  *Id.* (citation omitted).  Second, the minimum contacts analysis examines "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."  *Id*.

Here, Mizuho did not engage in any suit-related conduct that created a substantial connection with New Mexico.  In fact, all of Mizuho's claims-related activities occurred in

Japan, not New Mexico. Mt. Gox's bank accounts with Mizuho were located at Mizuho's Shibuya branch in Japan, and the Mizuho employees who made the policies and decisions related to Mt. Gox's bank accounts with Mizuho were located in Japan. Imaizumi Decl. ¶ 5. The only connection between Justice's claim and New Mexico is that Justice lives there and claims he suffered foreseeable injury there. It is well established, however, that the plaintiff's residence in the forum has no bearing on the Court's personal jurisdiction over a defendant. *Walden*, 134 S. Ct. at 1122 ("the plaintiff cannot be the only link between the defendant and the forum"); *see also Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1281 (10th Cir. 2016) ("the fact that [the plaintiff] was affected in Colorado (because he resides there) is insufficient to authorize jurisdiction over defendants").

Justice cannot circumvent these requirements by relying on the "express aiming" test. *See Old Republic*, 877 F.3d at 908 n.16 (explaining that in *Walden*, the Supreme Court "reemphasized the importance of the defendant's intentional contacts with the forum state, 'not just to a plaintiff who lived there'") (quoting *Walden*, 134 S. Ct. at 1122). Prior to *Walden*, plaintiffs often claimed that they could satisfy the "express aiming" test by alleging that a nonresident defendant engaged in wrongful conduct targeted at a plaintiff whom the defendant knew to be a resident of the forum state. *See, e.g.*, *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011); *Old Republic*, 877 F.3d at 916-17. After *Walden*, allegations of this sort are not enough. *See id*. Instead, the Supreme Court has "reinforce[d] that personal jurisdiction may not rest solely on the fact that a defendant's conduct affected the plaintiff in the forum state." *Anzures*, 819 F.3d at 1282 (citing *Walden*, 134 S. Ct. at 1126).

Here, Justice could not have even satisfied the old test because there are no well-pleaded

facts that Mizuho "targeted" Justice or "knew" that he was a resident of the forum.  Mizuho

changed its policy with Mt. Gox months before Justice requested cash from Mt. Gox, and

therefore, could not have "targeted" Justice.  In addition, Justice does not allege any facts

suggesting that Mizuho even knew Justice existed before Justice filed this suit.  Having failed the

old test, Justice does not come close to satisfying the new, more rigorous test under *Walden*,

which focused on the defendant's "own contacts with the forum."  Simply put, Mizuho does not

have any suit-related contacts with New Mexico, and thus, this Court has no basis to exercise

specific personal jurisdiction over it.

      The Illinois court reached the same conclusion in the related Illinois Action.  *Greene v.*

*Mizuho Bank, Ltd.*, 169 F. Supp. 3d 855, 863, 865 (N.D. Ill. 2016).  Like Justice, Illinois plaintiff

Gregory Greene asserted a single claim against Mizuho for tortious interference.  Also like

Justice, the Illinois plaintiff Greene did not allege that he sent any wire transfers to Mizuho or

that Mizuho received any transaction fees from him.  Quoting *Walden*, the Illinois court held that

Greene's alleged harm was insufficient to establish personal jurisdiction because "'mere injury to

a forum resident is not a sufficient connection to the forum.'"  *Greene*, 169 F. Supp. 3d at 865

(quoting *Walden*, 134 S.Ct. at 1125).  The same reasoning holds true here.  Mizuho stopped

accepting outgoing wire transfer requests from Mt. Gox long before Justice made his

unsuccessful attempt to withdraw U.S. dollars.  Just as Greene's transaction did not result in any

suit-related contacts between Mizuho and the forum, Justice's withdrawal request to Mt. Gox

could not have resulted in and did not result in any suit-related contacts between Mizuho and

New Mexico.  This Court therefore lacks specific personal jurisdiction over Mizuho, and

Justice's claim should be dismissed with prejudice.

**II.     The Complaint Fails To State A Claim For Tortious Interference**

Justice's claim should be dismissed for a second, independent reason – namely, he has failed to plead facts essential to a tortious interference claim.  To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege facts that "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and raises "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  Facts that are "merely consistent with" a defendant's liability, "stop[ ] short of the line between possibility and plausibility."  *Id.*; *see also Horizon AG-Products v. Precision Sys. Eng'g, Inc.*, 2010 WL 4054131, at *4 (D.N.M. Sept. 28, 2010).  In ruling on a 12(b)(6) motion, a court must "discount conclusory statements" and determine whether the remaining factual allegations, which are assumed to be true, give rise to a plausible claim.  *Iqbal*, 556 U.S. at 678.  If the court can only infer the "mere possibility of misconduct," the complaint must be dismissed because it fails to state a claim.  *Id.* at 679; *see also Warnick v. Cooley*, 2018 WL 3340519, at *3 (10th Cir. July 9, 2018).  As shown below, Justice has not alleged (and cannot allege) facts that would entitle him to recover for his tortious interference claim under New Mexico law.[6]

A plaintiff alleging tortious interference under New Mexico law must plead (1) the defendant knew of an existing contract between the plaintiff and a third party; (2) the contract

---

[6]  All of the relevant facts and events alleged in the Complaint occurred in Japan.  Mizuho reserves the right to argue that Japanese law applies to the plaintiff's claims and to seek dismissal on grounds of *forum non conveniens*.  Nonetheless, as shown here, Justice's claims are insufficiently pleaded even under the laws of his own home state.

was breached; (3) the defendant "played an active and substantial part" in causing the contract to
be breached; (4) damages flowed from the breach; and (5) the defendant induced the breach
without justification or privilege. *Horizon*, 2010 WL 4054131, at *5, *10.  As demonstrated
below, Justice's Complaint fails to adequately plead the first, third and fifth of these elements.
The failure to plead any one of these elements is sufficient to require the dismissal of the
plaintiff's claim.

> **A.  Justice Has Not Alleged That Mizuho Knew About
> His Contract With Mt. Gox**

"[K]nowledge [is an] essential element[] of an intentional interference claim." *Summit
Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1442 (9th Cir. 1993).  Justice has
not alleged any factual basis for his purely conclusory allegation that Mizuho "had actual or
constructive knowledge" of his customer agreements with Mt. Gox.  Compl. ¶ 81.  The
Complaint alleges no facts suggesting that Mizuho knew of Justice's existence, or knew that he
had a contractual relationship with Mt. Gox at any time before he filed this lawsuit.  Indeed, as
discussed in Section I, *supra*, the Complaint does not allege any transactional relationship or
contact of any kind between Justice and Mizuho.  Justice does not allege that he made any
deposits into Mt. Gox's account at Mizuho, nor does he allege that Mizuho knew or had any
reason to know of his alleged withdrawal request submitted to Mt. Gox on December 17, 2013.
The well-pleaded facts of the Complaint thus do not support an inference that Mizuho knew
about Justice or his contractual relationship with Mt. Gox.  *See Horizon*, 2010 WL 4054131, at
*11 (allegations suggesting defendant's generalized knowledge of plaintiff's contracts with third
parties held insufficient to plead defendant's knowledge of the contract at issue).  For that reason
alone, Justice's claim should be dismissed.

**B.    Justice Has Not Alleged That Mizuho Caused Mt. Gox
To Breach Its Contract With Justice**

Justice also fails to plead that, if not for Mizuho's new policy in June 2013, Mt. Gox

would have fulfilled Justice's December 20, 2013 request before its collapse several weeks later.

This additional pleading deficiency is independently fatal to Justice's claim because "a plaintiff

seeking to hold a defendant liable for tortious interference with an existing contractual

relationship must allege 'that the contract would otherwise have been performed, and that it was

breached and abandoned by reason of the defendant's wrongful act and that such act was the

moving cause thereof.'"  *Horizon*, 2010 WL 4054131, at *5 (quoting *Wolf v. Perry*, 65 N.M.

457, 462 (1959)).  "Unless the defendant's allegedly tortious actions were 'the proximate cause

of the injury there is no liability.'"  *Id.*  In other words, the plaintiff fails to plead that Mizuho

"played an active and substantial part" in causing the alleged breach of contract and therefore

fails to satisfy the third element of a tortious interference claim.

Not only does the Complaint fail to plead that Mt. Gox would have fulfilled Justice's

withdrawal request if not for Mizuho's new policy, the Complaint goes a step further and pleads

that Justice's losses and alleged injury resulted from Mark Karpeles's "gross negligence or

outright theft" and Mt. Gox's collapse, not from any conduct by Mizuho.  Compl. ¶¶ 1, 64

(alleging that Justice's bitcoin and fiat currency "were accessed, frozen, stolen, and/or misused

as the proximate result of Karpeles' failure to exercise reasonable care" and "[b]ut for Karpeles'

negligence, the plaintiff's and the Mt. Gox Class's bitcoins and Fiat Currency would not have

been compromised and/or lost").  Indeed, if Karpeles had not stolen or mismanaged Mt. Gox's

users' money and bitcoin and if Mt. Gox had not collapsed, Justice and every other Mt. Gox user

who held money or bitcoin on the Mt. Gox platform at the time of Mt. Gox's collapse would not

13

have suffered their alleged losses.  The Complaint offers no reason to doubt that, if Karpeles had

not caused Mt. Gox to collapse by stealing or carelessly losing Justice's and other users'

property, Mt. Gox could have sent Justice his money by wiring funds through another bank or by

sending a check.[7]  Because Mizuho had nothing to do with Mt. Gox's collapse and loss of users'

funds, Mizuho did not cause Mt. Gox to breach its alleged contractual obligation to Justice.

### C.      Justice Has Not Pleaded That Mizuho's Conduct Was Not Justified

Justice also fails to plead the fifth element of tortious interference – that the defendant

acted without justification or privilege.  Under New Mexico law, this element requires the

plaintiff to allege that "the defendant acted with either an improper motive or improper means,

and that 'the improper motive or improper means [was] used in persuading the [third party] to

breach the contract."  *Horizon*, 2010 WL 4054131, at *6 (citation omitted).  Where the

defendant's primary motive was to protect its own interest, the conduct is privileged or justified,

even if the plaintiff has alleged more than one motive.  *Fikes v. Furst*, 134 N.M. 602, 609-10

(2003) ("The inquiry, in the end, should be to determine the party's primary motivation for the

interference.  If it was primarily improper, then the person has no privilege.  If it was primarily

proper, then liability should not attach.").

Here, the Complaint plainly alleges that Mizuho's conduct was justified.  Specifically,

the Complaint alleges that Mizuho's decision to stop accepting outbound wire requests from Mt.

Gox resulted from Mizuho's increasing concern "[b]eginning in 2013" about "Mt. Gox's

growing transaction volumes amid reports that U.S. authorities were investigating Mt. Gox for

---

[7]      Indeed, as noted above, the Illinois court recently found that, even after Mizuho stopped
providing those services to Mt. Gox, "Mt. Gox account holders in the United States could
withdraw fiat currency using other intermediaries."  *Greene*, 2018 WL 2735112, at *2.

business dealings related to money laundering" and that Mizuho "wanted to distance itself from Karpeles and Mt. Gox" out of "fear[ ] that the partnership [with Mt. Gox] would expose [Mizuho] to further regulatory scrutiny and cause significant reputational harm."  Compl. ¶¶ 22-23.  The Complaint thus affirmatively pleads that Mizuho's decision to halt outbound wire transfers by Mt. Gox was motivated by a legitimate business purpose:  to sever Mizuho's banking relationship with Mt. Gox because of press reports that Mt. Gox was under investigation for illegal activity, including money laundering, and to avoid reputational harm.

As explained above, nowhere does the Complaint allege facts supporting a plausible inference that Mizuho's policy of no longer accepting Mt. Gox's requests to send wire transfers was intended to harm Mt. Gox's relationship with its users generally or with Justice specifically.  Nor does it allege that Mizuho knew that Mt. Gox would not honor its users' withdrawal requests after June 20, 2013 in some other way – for example, by wiring funds through another bank or by sending a check.[8]  Under these circumstances, Justice has failed to allege that Mizuho's conduct was unjustified or improper.  *See Fikes*, 134 N.M. at 610 (dismissal was warranted because the plaintiff failed to show that the defendant "was not substantially motivated by a desire to protect his own interest").  In short, Justice's tortious interference claim must be dismissed with prejudice because the Complaint explains precisely why Mizuho was justified in acting as it did.

## III.   Justice Cannot Pursue A Class Claim Against Mizuho

Justice purports to bring his tortious interference claim against Mizuho individually and pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a subclass of

---

[8]   *See* n.7, *supra*.

persons in the U.S. who "had bitcoins or money stored with Mt. Gox on February 24, 2014" and "initiated [an unfulfilled] request to withdraw Fiat Currency from their Mt. Gox account" after June 20, 2013, *i.e.*, the date Mizuho stopped accepting wire transfer requests from Mt. Gox. Compl. ¶ 53. As shown below, Justice's purported class claim against Mizuho was filed after the expiration of the four-year limitations period for tortious interference claims under New Mexico law, and, therefore, under the Supreme Court's June 11, 2018 decision in *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018), the claim cannot proceed as a class action. If the Court does not dismiss Justice's claim outright – either for lack of personal jurisdiction or for one of the three independent reasons Justice fails to state a claim for tortious interference – the Court should therefore at a minimum dismiss Justice's class action allegations against Mizuho pursuant to Federal Rule of Civil Procedure 12(b)(6), or strike them pursuant to Rule 12(f). *See Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) (a court may strike class allegations pursuant to Rule 12(f) where "the complaint demonstrates that a class action cannot be maintained on the facts alleged"); *see also Tullie v. Quick Cash, Inc.*, 2014 WL 12782961, at *2 (D.N.M. Dec. 12, 2014) ("A motion to strike class allegations is 'procedurally permissible' at the pleading stage" and may be granted "where a defendant demonstrates from the face of the complaint that the proposed class cannot be certified as a matter of law") (citations omitted).

Under New Mexico law, the statute of limitations for tortious interference with contract resulting in injury to property is four years. N.M.S.A. § 37-1-4. The cause of action is deemed to accrue when the plaintiff discovers the injury. *Id*. § 37-1-7. Here, Justice alleges that he submitted a withdrawal request to Mt. Gox on December 17, 2013, and that request remained unfulfilled when Mizuho "went dark" on February 24, 2014. Compl. ¶¶ 35, 45. Thus, at the

16

very latest, Mt. Gox's alleged breach occurred on February 24, 2014 when it became impossible
for Mt. Gox to fulfill Justice's request.

Justice filed this action more than four years later, on March 26, 2018, and thus after the
four-year statute of limitations had expired.  Before the Supreme Court's recent decision in
*China Agritech*, plaintiffs typically argued that, under *American Pipe & Construction Co. v.
Utah*, 414 U.S. 538 (1974), the filing of a class action should toll the statute of limitations for the
period the class action was pending, both for class and individual claims.  But that argument is
no longer available.  In *China Agritech*, the Supreme Court granted *certiorari* to resolve "a
division of authority among the Courts of Appeals" as to whether *American Pipe* tolling applies
to follow-on class actions (as opposed to just individual claimants).  138 S. Ct. at 1805.  The
Supreme Court resolved that dispute by unanimously holding that *American Pipe* tolling "does
not permit the maintenance of a follow-on class action past expiration of the statute of
limitations."  *Id.* at 1804.

Here, Justice filed a class action against Mizuho after expiration of the four-year statute
of limitations.  Under *China Agritech*, Justice's class allegations against Mizuho cannot be
sustained and should be dismissed or stricken.  *Id.* at 1806, 1811 (holding that "*American Pipe*
does not permit a plaintiff who waits out the statute of limitations to piggyback on an earlier,
timely filed class action"); *see* Rule 12(f); *Sanders*, 672 F. Supp. 2d at 990.

## **<u>CONCLUSION</u>**

For all the foregoing reasons, this Court should dismiss the Complaint with prejudice against Mizuho.

DATED:   July 16, 2018

By:   /s/ Jerome S. Fortinsky
      Jerome S. Fortinsky

SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000
Facsimile: (212) 848-7179
jfortinsky@shearman.com

*Counsel for Defendant Mizuho Bank, Ltd.*