IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVE JUSTICE,

                Plaintiff,

vs.

MIZUHO BANK, LTD. And MARK
KARPELES,

                Defendants.

Case No:  18-CV-286-F

---

**ORDER ON DEFENDANTS' MOTION TO DISMISS**

---

This matter is before the Court on Defendant Mizuho Bank Ltd.'s ("Mizuho Bank") Motion to Dismiss. The Court has reviewed the motion, response, and reply and is fully informed in the premises.

**BACKGROUND[1]**

Plaintiff seeks to bring a class action against Defendants Mizuho and Mark Karpeles on behalf of himself and similarly situated individuals. Specifically, Plaintiff claims fraud and negligence against Mark Karpeles. Additionally, Plaintiff claims tortious interference with contract against Defendant Mizuho Bank.

This case involves the demise of Mt. Gox Bitcoin Exchange ("Mt. Gox"). Defendant Mark Karpeles owned and ran Mt. Gox. Mizuho Bank was Mt. Gox's banking partner. Mt. Gox was founded in 2009 as a platform for buying and selling bitcoin. Before its collapse, Mt. Gox claimed to provide users the ability to "[b]uy and

---

[1] For purposes of a motion to dismiss, the Court accepts Plaintiff's well pleaded facts in his Complaint.

sell Bitcoin 24/7/365 with the world's most sophisticated trading platform." (Doc. 1, [Complaint] at ¶9).    To transact on the Mt. Gox platform, users had to register for an account with Mt. Gox. (*Id.* at ¶ 10).  To make purchases and trades, users could transfer bitcoins directly into their Mt. Gox accounts or deposit cash by wiring money to Mt. Gox's banking partner, Mizuho Bank, who would then transfer money into the account on behalf of Mt. Gox.  (*Id.* at ¶ 12).  Mt. Gox received a transaction fee for each trade. (Id. at ¶ 13).  Mizuho Bank was Mt. Gox's bank partner in Japan and maintained Mt. Gox's operating accounts.  (*Id.* at ¶ 18).  Mizuho Bank processed wire transfers from other banks, which would be transferred to Mt. Gox's accounts.  (*Id.* at ¶ 19).

In 2013, Mizuho became concerned with Mt. Gox's growing transaction volumes and reports that U.S. authorities were investigating Mt. Gox for business dealings related to money laundering.  (*Id.* at ¶ 22).  Mizuho Bank, wanting to distance itself from Karpeles, asked Karpeles to close Mt. Gox's account at Mizuho and he refused.  (Id.). Mizuho then implemented a series of new policies meant to frustrate and disrupt Mt. Gox's business and relationship with its customers, including refusals to process international wire transfer requests. (*Id.* at ¶ 24).  In June 2013, Mizuho completely stopped processing international wire transfers.  (*Id.* at ¶ 25).  During this time, Mizuho continued to accept user deposits into Mt. Gox's accounts.

Plaintiff claims Karpeles made false and misleading statements to the public and his Mt. Gox users and took no steps to correct them.  (*Id.* at ¶ 31).  Additionally, Plaintiff claims that Mizuho prevented Mt. Gox from disclosing that withdraw difficulties were

attributable to Mizuho and that Mizuho wanted to terminate its banking relationship with Mt. Gox. (*Id*. at ¶ 32).

In February 2014, Karpeles halted his customer's ability to withdraw bitcoin from Mt. Gox. (*Id*. at ¶ 33). On February 24, 2014, the Mt. Gox website "went dark." (Id. at ¶ 35). A few days later on February 28, 2014, Mt. Gox filed for bankruptcy protection in Japan. (*Id*. at ¶ 36). On June 18, 2014, the Bankruptcy Court in the Northern District of Texas officially recognized Mt. Gox's Japanese bankruptcy proceedings as a foreign main proceeding under Chapter 15 of the U.S. Bankruptcy Code, effectively staying all pending litigation against it in the United States. (*Id*. at ¶ 39) (citing *In re MtGox*, Case No. 14-31229. (Bankr. N.D. Tex.). Karpeles was arrested by Tokyo police and formally charged with fraud and embezzlement in September 2015. (*Id*. at ¶ 41).

Plaintiff claims that he joined Mt. Gox on or around February 16, 2013. (*Id*. at ¶ 42). As a member of Mt. Gox he paid transaction fees on every trade that he made. (*Id*. at ¶ 43). In December 2013, Plaintiff converted some of his bitcoin to Fiat Currency with the intention of withdrawing $15,000.00 USD from his Mt. Gox account. (*Id*. at ¶ 45). Plaintiff was never able to withdraw those funds.

## DISCUSSION

**Standard for Motion to Dismiss**

***Lack of Personal Jurisdiction***

In a motion to dismiss for lack of personal jurisdiction, the "[p]laintiff bears the burden of establishing personal jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (citation omitted). For

the plaintiff to defeat a Rule 12(b)(2) motion to dismiss, the plaintiff need only make a "prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Id.*

"The law of the forum state and constitutional due process limitations govern personal jurisdiction in federal court." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). New Mexico's long-arm statute "extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible." *Tercero v. Roman Catholic Diocese*, 48 P.3d 50, 54 (N.M. 2002). Therefore, the exercise of jurisdiction is permitted so long as it does not offend the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (citation omitted). Thus, for a court to have personal jurisdiction over a nonresident defendant, there must exist "'minimum contacts' between the defendant and the forum state." *OMI Holdings*, 149 F.3d at 1090 (citations omitted). To satisfy the minimum contacts standard, a court may assert either specific or general jurisdiction over the defendant. *See id.* at 1091. However, if there is no specific or general jurisdiction, personal jurisdiction will nevertheless exist if the defendant consents to jurisdiction.

Specific jurisdiction "depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires*

*Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (alteration in original). When a court has specific jurisdiction, it is "confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.*

"Specific jurisdiction calls for a two-step inquiry: (a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Old Republic*, 877 F.3d at 904 (citing Burger King, 471 U.S. at 476–77). "The minimum contacts test for specific jurisdiction encompasses two distinct requirements: (i) that the defendant must have purposefully directed its activities at residents of the forum state, and (ii) that the plaintiff's injuries must arise out of the defendant's forum-related activities." *Old Republic*, 877 F.3d at 904 (citation and quotation marks omitted). "The purposeful direction requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, . . . or of the unilateral activity of another party or a third person." *Id.* (citations and quotation marks omitted). "Mere foreseeability of causing injury in another state is insufficient to establish purposeful direction." Id. (citation omitted).  But "where the defendant deliberately has engaged in significant activities within a State, ... he manifestly has availed himself of the privilege of conducting business there." *Id.* (citations and quotations omitted).

In contrast, general jurisdiction is all inclusive and does not depend on a specific issue in dispute. Rather, a court may exercise "general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their

affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (citations omitted).

**Personal Jurisdiction Over Mizuho Bank**

Mizuho Bank argues that the Court lacks either general or specific jurisdiction over it in this case. Mizuho Bank is incorporated under the laws of Japan, with its principal headquarters in Japan. (Doc. 1 [Complaint] at ¶5). Mizuho Bank has presented undisputed evidence that: (1) Mizuho is incorporated and located in Tokyo, Japan; (2) Mizuho has no branch offices or representatives in New Mexico; (3) Mt. Gox opened its bank accounts at a Mizuho branch office located in Tokyo, Japan; (4) Mizuho did not open or make any decisions regarding bank accounts belonging to Mt. Gox in New Mexico; and (5) Mt. Gox users made withdrawal requests directly to Mt. Gox, not Mizuho, and Mizuho, in accord with its general practice and Japanese banking laws, does not communicate with its customer's customers. (Doc. 8 [Declaration of Yasuo Imaizumi] at ¶¶ 2, 4, 5, 6, 7, and 8).

Thus, there is no dispute that Mizuho Bank is not subject to general jurisdiction in New Mexico. Therefore, the Court will consider whether Mizuho Bank is subject to specific jurisdiction. As the Court previously stated, this requires Plaintiff to show Mizuho Bank had sufficient minimum contacts with New Mexico.

The minimum contacts standard typically requires courts to determine: "(1) whether the defendant purposefully directed its activities at residents of the forum state; (2) whether the plaintiff's injury arose from those purposefully directed activities; and (3)

whether exercising jurisdiction would offend traditional notions of fair play and substantial justice." *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013) (citation omitted). Regarding the first requirement—purposefully directed activities—in tort-based lawsuits, there must be an intentional act that was expressly directed at the forum state with knowledge that the brunt of the injury would be felt in the forum state. *Id.* at 1264–65. Additionally, Plaintiff's claim against Mizuho is for tortious interference. Under New Mexico law, a claim of tortious interference with contract requires a Plaintiff to prove:

> (1) Defendants had knowledge of the contract; (2) Plaintiff was unable to fulfill [his] contract obligations; (3) Defendant played an active and substantial part in causing Plaintiff to lose the benefits of the contract; (4) Plaintiff suffered damages resulting from the breach; and (5) Defendant induced the breach without justification or privilege to do so.

*Deflon v. Sawyers*, 2006-NMSC-025, ¶ 16, 139 N.M. 637, 643, 137 P.3d 577, 583, as corrected (June 29, 2006).

In this case, Plaintiff alleges that Mizuho intentionally and affirmatively interfered with his contract with Mt. Gox. Plaintiff claims that Mizuho's refusal to process the attempt to withdrawal only took place because of Plaintiff's New Mexico origin. The only connection between Plaintiff's claim and New Mexico is that Plaintiff lives there and claims he suffered foreseeable injury there. However, it is well established that the plaintiff's residence in the forum has no bearing on the Court's personal jurisdiction over a defendant. *Walden v. Fiore*, 571 U.S. 277, 284–85 (2014) ("[P]laintiff cannot be the only link between the defendant and the forum.").

However, in this case there is no allegation that Mizuho's activities were directed to Plaintiff. Additionally, there is no allegation that Mizuho was aware of Plaintiff's address in New Mexico. Finally, Mizuho did not take any affirmative act, rather they refused Mt. Gox's request for the transfer of funds. There are no allegations of activity directed to New Mexico, only actions targeted to Mt. Gox's customers in the United States. This cannot support a claim for personal jurisdiction for Mizuho in New Mexico.

## CONCLUSION

For all the above stated reasons,

IT IS ORDERED that Defendants' Motion to Dismiss is GRANTED based on lack of jurisdiction.

Dated this __13__ day of November, 2018.

NANCY D. FREUDENTHAL
CHIEF UNITED STATES DISTRICT JUDGE